I know I have the All-Star team in front of me on judicial estoppel. Oh. No question about that. You've got a lot of bullet holes to show for it. I don't know, Madam Judge. I'm not sure about that. Real quickly, this is all about a motive to conceal. Did Johnny Ray Long have a motive to conceal a claim? And I know all your cases, and so do all the counsel here, and they're all at one end of the continuum, basically. I mean, you can just roll them all back to me. It is fair to say that you're trying to move uphill today. Yes, ma'am. Yes, ma'am. And so I think the guidance that you referred to, Judge, in Reed is real helpful. Everybody talks about New Hampshire, the case, and it's not supposed to be inflexible prerequisites or exhaustive factors. But, of course, the cases before you and the facts before you make it seem like everything is inflexible and it's exhaustive if there's bankruptcy. I'm here to tell you I believe that you were right, and I think the Supreme Court was right, and I know it's gotten close on bankruptcy. It's almost like we just automatically, as a matter of law, say there's a motive to conceal. But here it is different, and we're here, and Mr. Long's paid a whole bunch of court costs to get here because we are different. We're at the very other end. Well, you're close to the other end. We are close. The problem is you're not quite at the other end, because it is fair to say in this case, it seems to me, that Mr. Long was the beneficiary of the bankruptcy system in the sense that he didn't have to pay interest on that debt. And, of course, when you file a chapter proceeding like that, there's always some people who just don't file any claims, which is what happened here. So those get wiped out, and so you do get a benefit even in a 100% pay case. So he got a benefit from this case, no question about that. I don't see there's any really room for argument about that, though you're welcome to try. We would consider that as part of the inflexible prerequisites. I mean, his benefit here, he would have paid interest. He had money to pay the interest. The thing that got filed he thought was to pay all creditors. That's really clear. Everybody talks about that. And then, not to overstate it, but the standing trustee who was a trustee in his case is writing all through these years that if you have a 100% credit or pay plan, that there's no motive to conceal. And she puts it in professional journals. And I commend to you, better than I can say it, the declaration of Frank Monroe, a former bankruptcy judge in the Western District, and it's at the appellate 10428. Judge Monroe goes through all of these factors, and he said, Look, I'm recommending here, I see that there shouldn't be judicial estoppel, but that's understanding there's no additional bad conduct here like there was in Watts. Watts is an out-of-control lawyer. He's off filing cases for the trustee and timelines are messed up. There was bad faith there, and the court found it. And they should have. This is not that. I mean, the other side, my learning council over here, are going to say some things, but the facts are Johnny Ray Long didn't know he had to do anything else, and I know he has a duty to report. We're not standing up here saying that Chapter 13 debtors don't have a duty to report. We know that now. But I would point out that Fluchin's came out after his discharge, and it was a little bit unclear with the professional writings, and Judge Monroe acknowledges that. He said, You know, in the Western District of Texas, it's just generally understood there was no motive to conceal if there's a 100% plan. So I don't want to get to splitting hairs on whether there's a 100% plan because everybody thought it was, and we're talking about the intent of the debtor. Is this debtor trying to get away with something? You know, from where I come from, he's not trying to get away with something, and he wants to pay everybody. You know, he could have. His best thing was to file a Chapter 7 at that time, flush it all, and then start over. He was working for the client over here, their client, but he didn't. He said, By God, I'm going to pay all my debts. And he thought that was what was filed. So judicial estoppel, I guess I'm saying, should be flexible enough to look at a man who has good intentions as a debtor, the best you can have to pay all your debts. And all these cases, in fact, if you go back to Coastal Plain, Judge Barksdale, goes back to all of these Third Circuit cases and all, and they all focus on bad faith, chicanery, fast and loose, and Watts is all over fast and loose. So that's not here. None of those things are here. We are at the end, and Mr. Long should not be judicially estopped in this case. And I realize I am running up against almost a tsunami of previous bad fact patterns. I mean, Reed is a flagship case, if you will, but, I mean, it's just awful. These people have claims that hide it and go off and file before the bankruptcy case is filed. Awful. That's not here. Now, I know that this court is not going to probably put in an opinion that Johnny Ray Long is an average guy. He thought he had a 100% plan, and average people who are not bankruptcy experts would probably think they're doing everything they could possibly do. That's what Johnny Ray thought. And shouldn't judicial estoppel be able to absorb that? Yes, ma'am. Did he have a lawyer through this? He did. I mean, a bankruptcy lawyer. Yes, he did. Not me, but he did. Well, so where was he when this deal went down? I mean, he knew better. Well. Say Johnny Ray Long didn't know. He thought he had a 100% pay plan, and that was that. Okay, I can understand how that might happen. But he had a lawyer. What was the lawyer doing? The lawyer thought the same thing the standing trustee did. He did. I mean, Your Honor, the standing trustee in that district. I've got some sympathy for Mr. Long, maybe, but not for the lawyer. Well, I prefer not to comment too much on that. But, you know, the lawyer did take the position, just as a matter of fact, that the standing trustee took. And remember, this is over three years that she's writing this stuff. It's not like an oversight. I write an oversight in my brief, and you're going to catch it, and then I can apologize to you. She wasn't. She just says there's no motive to conceal if you're paying everybody. Where's the windfall? There really isn't a windfall. I understand, and I agree with you, that there wasn't interest paid in this thing, and one of the claims a creditor didn't submit. But that doesn't mean that Mr. Long didn't have the right intention, and he wasn't seeking to avoid anything. He was seeking to pay everything. So we go back through Coastal Plain and all those cases. I don't think anything you've written, Judge King, is contrary to what Judge Barksdale talked about. He did go a lot into the Third Circuit cases, which do want some bad faith, or they do want some kind of wrongful intent displayed. And I guess it's a 1999 case, so it would still be fairly modern, even though we have an en banc decision. And in Love v. Tyson, what did you find? You found that Love didn't submit any evidence. I mean, you know, the court below looking at judicial estoppel said, well, you haven't submitted any evidence. They've made a showing. Now you've got to show that it was inadvertent. So that was a failure of proof. I don't think Love v. Tyson hurts us, and it shouldn't hurt Mr. Long. I don't want to skip anything else on judicial estoppel, if you have anything, but I do commend Judge Frank Monroe's declaration, and the reason is because Judge O'Connor had it. And Judge O'Connor is a wonderful judge, but I think he believes that up here there's a summary judgment standard, and if bankruptcy pops up anywhere, then it's automatically judicial estoppel. I think that's what he thinks. That, of course, is probably wrong. I believe it is wrong, Your Honor. The thing that was significant here from my standpoint, speaking just for myself, is that the court did ask the trustee, do you want this asset or not? And it seems to me that's a critical question because every time you estop a debtor, you're also estopping his estate, and the trustee said no, which is important, very important. It is, and I realize the cases keep talking about people that come back after they get challenged and they're shown what they've done, but all those bad fact cases down there, that happens, but Mr. Long here responded right away and amended his schedules. And, you know, this is a big case. I mean, the United States government has a big stake in the outcome of this case. Why did the trustee say that she didn't want it? Your Honor, I will tell you as an officer of the court, but we don't have it in the record, but she was quite friendly with the law firm on the defense in that case, and she called them when she found out about this. I mean, that's in the record, but she's admitted she called them. And she was on the stand, by the way, in Austin when she said that. It's just their relationship, you can't get out of relationships, but she has not written, as Judge Monroe says, she hasn't written anything that retracted those three years of saying if you've got a 100 percent plan, there's no motive to conceal. And that really is logical. It's logical. So, and I'm not pointing any fingers at any particular lawyer because the guys on the other side in Austin and Dallas are my friends, but they still have a better relationship, let me say, than we did with her. Well, help us just distill it one more time, please, for those who are not experts. If it's true, I mean, I agree that it's possible that the court could have found the other way. And we would say that, well, it's almost 100 percent, but there's this interest, and so it's within their discretion to not find it under the circumstances. It's not a sneaky person under some of the previous cases, comparatively speaking. But because the court, that's not what the court found, why don't we just have to, why don't we have to find no abuse of discretion here? I mean, it just seems that while it could have gone the other way, and there's lots of good reasons why it went the other way, it didn't. And so if we truly believe that it's within the discretion and that there is some, for this equitable doctrine, the court should look at all the equitable factors, shouldn't we respect the determinations that are made once they're made? Not when they wrongfully apply the law, when they think it's something it's not. Well, I agree with you that it's not a per se, I agree with you on that, that it's not per se. But what is wrong? If the district court identified three possible motives, and we can stand here today and know that interest is an issue, how can we say that it's wrong? I think you do need to look at the totality of the circumstances. He was inviting in the trustee to give her opinion. The trustee was not reappointed under Rule 5010. So the case was still closed. And we asked him for another week or two so that we could get the judge, the bankruptcy judge, involved so we could determine whether a trustee was necessary, and then the court shut us off. The court didn't have any evidence of any bad faith of Mr. Long. And I think this is a point for what I call common sense. Is there anybody in the world that would say, I want to pay all that $50,000. He's a working guy. He doesn't have it in his pocket. But I want to see if I can get away with not paying interest. That didn't happen, and there was no evidence of that. And we're talking judicial establishment, and we're talking what was his intention. Did he have a motive to conceal? This guy wanted to pay it all. He didn't want to conceal anything. He's never concealed anything, and the court didn't have a record in front of him that showed there was any intent to conceal. Again, as I asked Judge King, I would ask you to read Judge Monroe's declaration. It's just quite specific and on point. And he just says, I don't see anything in this record that would justify judicial estoppel. I've got a minute 28 left, kind of. So I also do want to say that the judge did not allow us to amend our pleadings to conform to the evidence after he had ruled on the 12B6 motion, that's de novo. And he said, well, you don't have any allegations that these representations, certifications, and so on are conditions of payment. Well, we did. We went back and we submitted it 2 days before his scheduling order suspense date, and the judge denied our motion for leave. He's the one that set the scheduling order, and he allowed it. He allowed motions for leave through that date, but he didn't allow us to conform to the evidence. And we have in our written pleadings all the different paragraphs that repeated the conditions and prerequisites to payment, plus the evidence. The contracting officer for the Air Force said that all the representations, certifications, about being accurate, complete, current, all of those were conditions of payment. He just said it in his testimony. Then the judge refused to allow us to amend. Wrong under his scheduling order. Wrong under Rule 15A. And we would ask you, we are hoping and believing that you will reverse what's happened in this isolated incident, and that when we get back, we'll be able to amend our pleadings, to fully plead to conform to the evidence. Thank you very much. Thank you, sir. Mr. Briss? Thank you, Judge Stewart. If you may, please, the court. I think that what Judge Elrod noted earlier in this argument is really the key to it. The standard here is an abuse of discretion standard. The question is not whether a different judge might have not held judicial stopper, whether they would have, but whether this was so far out there to be an abuse of discretion. And truthfully, it's not only not far out there, it's really heartland. This court's guidance has been that so long as there is knowledge of the facts underlying the claim and a motive to conceal, it's appropriate, at least absent other factors that might come in, to have judicial estoppel. And that's really what happened. Heartland. Do you really think he was trying to conceal? Yes. Your Honor, first of all, I don't want to testify, Your Honor. No, but I mean, it's not. It's just so unlikely that he was trying to conceal for the interest. Your Honor, I don't think it's at all trivial. Let me just sort of start there. We've gotten interest for five years on $60,000. $20,000 of that debt was high-interest debt. And as the bankruptcy court in Schoenberg explained, you use the contract rate generally for interest. So if you look at that, you're probably talking, you know, somewhere in the $6,000 to $10,000 range. If you look at this court's decision in Jethro, that case involved $8,000 of unsecured debt that the debtor got away with not having to pay by not scheduling his assets. So I think, you know, one of the things that I think has been a hallmark of this court's jurisprudence in this area, for example, is not saying that a debtor can get away with a failure to schedule and not have judicial estoppel if he just says, you know, puts in an affidavit saying, I didn't mean it. Now, the interesting thing in this case is you didn't, the he didn't think he had to do it line of argument has been tried in this court many times before in different flavors. So some people have said, I didn't think it was a good lawsuit. That would have been superior crew boats. Some people have said, I just didn't think I had a duty to disclose post-confirmation. You know, that would have been flugence. Every time that those kinds of arguments of I didn't think I had to have been tried, this court has shot them down and said it's not relevant. What's relevant is your knowledge of the facts underlying the claim. There's a lot of discussion here by opposing counsel about articles written by the trustee here, the chapter 13 trustee, talking about the application of judicial estoppel in 100% payment plans. There's really two problems with that line of argument. One is it certainly can't be the case that his knowledge of whether he'd get punished later with judicial estoppel for not having disclosed everything he was going to disclose is a factor that this court's going to use and is going to say, well, gosh, he knew he could get away with not disclosing it and not get judicially estopped, so we're going to excuse him from not disclosing. And that's, to me, kind of a silly argument. And secondly, when the trustee talks about 100% repayment plan, that's 100%. Now, this might be, Your Honor, Judge Elrod, this might be 92% or something of that sort, but it's not a 100% payment plan if they haven't paid back 100%. The fact is he got away with not paying his creditors for disclosing everything that was due. In answer to, I think it was your question, Judge King, I think you had asked, and if I got it wrong, you asked the question, I apologize, but why the trustee decided not to come into the case. Actually, footnote 74 of the reply brief that opposing counsel submitted long has conceded that the reason that the trustee didn't come in is it wouldn't be worth it for the estate, that, frankly, the costs would exceed the benefits of coming in. Now, Mr. Long has wanted all along for the bankruptcy to be reopened, and he said this in his brief to the bankruptcy court, so that a trustee could be reappointed and could abandon the asset to him. Now, that's, of course, off base on lots of grounds. As this court held in Superior Crew Boats, you can't have an asset abandoned in this kind of a context to the debtor that the debtor can then sue on if the debtor was judicially stopped to begin with. So that whole theme of why he wanted to do it really wouldn't fly. The real reason that the trustee didn't do it is it wasn't worth it. The reason the United States hasn't intervened in this case is it hasn't been worth it for the United States. There's a lot of argument that Mr. Long has made that it was wrong for the court to only give a week to the trustee. He's also argued that she wasn't reappointed at that point, so she wasn't really the trustee. As the district court found, none of that is really his issue. I mean, we disagree with him on all of it, but even if any of it were right, it wouldn't be his issue because he's judicially stopped regardless. Next, his criticisms of what the district court... I don't know about that. That he is judicially stopped regardless? I don't think... I don't think judicial estoppel is a rigid doctrine that has to be applied automatically. I don't mean to suggest that it is. The letter doesn't disclose it. He's got an even and 100%... I don't think it's automatic. Your Honour, I don't mean to suggest otherwise. But I think the fact that the trustee... I think the fact that the judge recognized that the people who ultimately pay are the creditors and asked the representative of the creditors, do you want this or don't you, is important. Oh, I think the judge should be complimented for that, Your Honour. I didn't mean to suggest anything different. All I was saying is if, in fact, he is judicially estopped for reasons having to do with this court's, you know, judicial estoppel doctrine and the court exercising its discretion correctly, it's a separate question that this course has addressed as in Reed and in Flugens and in Love, what happens with regard to the trustee. And here you've got a trustee who didn't want to come in. But that's a separate question entirely to whether the debtor... I don't think it is a separate question. I think before the judge draws the bottom line and says, estopped, cooked, dead, the judge needs to think about the trustee and the creditors. And that goes into the decision that informs whether you're going to invoke estoppel or not. I mean, you can say, you should have disclosed this thing, and that's bad. But the question whether we're going to estop you or whatever we're going to do about this, whatever the bottom line is, is a function in part of whether the creditors should get the benefit of this thing. Okay, Your Honor, I think we're saying the same thing but perhaps in different words. There's no doubt about it that it's an important consideration whether the creditors get paid. And how the district court handles the case has to be with an eye to that question. My only submission on that is that regardless of whether the creditors get paid, if Mr. Long should be estopped personally, then he should be estopped. And this court explained that in Crew Boats when he said it was abandoned to him. This court actually explained that in Reed and in Flugence where the court said, and if the suit is carried on by the real party in interest, the trustee, and the trustee recovers for the estate, if there's excess dollars left over, they go back to the defendant. The court said that in Reed and in Flugence. So kind of regardless of how it all comes out, it doesn't go back to Mr. Long. If he is rightly estopped, then he doesn't get anything out of it. That was my only point, not to suggest anything about the creditors. What about the failure to allow the amendment? Okay, happy to address that, Your Honor. The district court actually had three reasons for failing to allow the amendment. Any of the three of them under this court's and the Supreme Court's precedence would have been enough independently. Number one, he had already had an opportunity to amend to cure this very deficiency, and he had failed to under this court's decision in Spicer. That would have been enough by itself. Secondly, it would have caused three different types of prejudice. First of all, because he wanted to seal the third amended complaint for two months. That would have caused the court to have to push off all of the trial schedules and all of the briefing schedules between then and trial, which was only going to be six months away. Secondly, it would have disrupted an already pending summary judgment motion, and this court has held that interference by amending sort of belatedly would, if you're going to disrupt summary judgment, that can also be prejudice. The third prejudice is he wanted to add another defendant, which would have entailed further discovery. So he found prejudice. And third, he found futility. And my opposing counsel is arguing that it wouldn't have been futile, that, in fact, he added enough in the third amended complaint. The problem is what he did is he added a whole bunch of invoices. Adding a whole bunch of invoices doesn't add to a demonstration of fact that the certification that he's claiming was false here was a condition or a prerequisite, is what this court uses in its terms, to payment. You can add all the invoices you want, and it doesn't add a factual basis under Twombly for that necessary element. And that's why he failed, and that's why the district court held that he failed. So you've got three reasons, all of which were sufficient. The court was by no means acting beyond its discretion in refusing to allow amendments here. Any further questions, I'd be happy to address them. All right, I believe we have your argument. Thank you. Thank you. As far as an opportunity to amend to address the court's rulings on 1286, counsel is accidentally wrong. The court ruled while we were at the end of the deposition phase, and this was the amended pleading that was submitted to cure what the court said were shortages. We didn't agree they were short, but we put in there citations to the contracting officer of the United States who said that these representations and certifications were conditions of payment. I got his testimony in the exact words. So counsel's mistakenly wrong on this, and if you'll look at our motion, we actually cite to the testimony in the pleading. We did not want to let Judge O'Connor have any room to move. So we got the evidence in there as well, and that was our first opportunity to respond. And I can just say that, you know, lawyers, I know, when the judge says you can submit a motion to amend by the state, that's what we think. And the judicial estoppel was never pleaded. It's an affirmative defense, and the judges in this panel here know it's an affirmative defense, and that didn't seem to make any difference. And then summary disposition motions were due to be filed by a certain date. One party did not have to go by that date. It was the other party didn't have to go by that date. It was, I'm just saying procedurally, it was unusual. That's all I'll say. As far as reasons for not letting it in besides the 12B-6, that was the answer in pleading. But the only reason, as you mentioned, the summary judgment, is they filed it early. It wasn't filed by disposition. It was early. And I don't think there's a Fifth Circuit case that says, you know, if you've got a scheduling order that says you can file an amended pleading by this date, if somebody jumps on it and files an early motion for summary judgment, well, you're just out of luck. I don't think so. Not in the Fifth Circuit. So that's no good. And he's using wrong standards of law. He's applying the law improperly to the facts and clearly erroneous, as we know, where abuse of discretion is not free of legal review and mixed questions of fact and law are subject to your review. So you have a lot of opportunities to do that. Judge King is right. Sam Boyd has financed this through this day. I'm not proud of it. It's painful. But I will tell you that I and my client, J.R. Long, who never attempted to deprive a creditor of what they were due, will take this to the end. That's why we're here. We were weeks before trial when this surprise sprung up. And so we're here. We're ready to go do the United States business. I'm ready to do the business for Mr. Long. And the court here is absolutely correct. It's just not believable that at the time he thought his plan, or at any time, he wanted to chisel away the interest. That is just almost of no moment. It's an important amount of money that we have tendered to the bankruptcy court that from any recovery we will pay. The creditors, we will pay. The interest, we will pay the trustee. And the court now has the motion to reopen the bankruptcy on hold until you rule. And as for the United States not coming in, the trustee made that comment also. So since counsel invited me to inform you, AUSA Scott Hogan, who's the civil desk chief up in Dallas, said we do care what happens in this case. We have not disregarded what happens in this case. But we are in a real world. They have the sequester world. I'm capable of trying it. I'm capable of financing it. And they made a decision to let me do that. That is not I'm not interested. And he called the trustee on making that comment. So let's not get into the middle of all of this. The U.S. doesn't care. The U.S. cares greatly. These people made all their money charging commissions on work done by other people. That's what happened here. They made, you know, 90% of their $690 million was charging the commission to somebody else doing the work. That's not how contracts work. And the contract officer said it was outrageous that they were making up to 40% on the contract, with Mr. Long being told to bid and fight for 5.5%. This is not a closed case or injustice. These are slick guys in Austin with their feet up on the desk. They're simply charging commissions. And I made the senior financial person, Urbanowski, finally admit to it. She said, oh, I never thought they were commissions until I hit her with her own e-mails. We ask that you reverse, remand, send this back. Let me and Mr. Long take care of the predators. And please get us an amended pleading opportunity so we can get the court to reconsider. Thank you. All right. Thank you. Thank you to the counsel on both sides for your briefing and oral argument. That concludes the arguments for this morning. The case will be submitted to the court, and we otherwise stand in recess until 9 a.m. tomorrow.